UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

ERIC LAMONT JENKINS,

        Defendant.
_____/

CASE NO. 2:12-mc-50376

HON. MARIANNE O. BATTANI

## OPINION AND ORDER DENYING DEFENDANT'S APPEAL

This matter is before the Court on Defendant Eric Lamont Jenkins' appeal of his conviction during a bench trial before Magistrate Judge Laurie Michelson in which Defendant was found guilty of the misdemeanor offense of failing to comply with signs and directions of a Federal police officer in violation of 41 C.F.R. § 102-74.385. The Magistrate Judge ordered Defendant to pay a fine of $25.00. For the reasons stated below, Defendant's appeal is **DENIED**.

### I.   STATEMENT OF FACTS

In early 2010, Defendant Lamont Jenkins began phoning the United States Attorney's Office daily and leaving "bizarre" voicemails. Specifically, the calls concerned David White; a man Jenkins believed "controlled" him. That February, Jenkins met with Deputy Marshal Patrick Read and Assistant United States Attorney ("AUSA") Joseph Falvey to discuss Jenkins' concerns and the content of the voicemails. (Doc. 10 at 2-3). Deputy Read is responsible for investigating inappropriate communications with federal officers. Jenkins notified Read of his belief that the Drug

Enforcement Agency ("DEA") previously tapped his telephone and that AUSA Michael Lang requested him to commit perjury. (Id. at 13). His refusal, Jenkins suggested, led to a vendetta against him. Although Read did not know David White, he agreed to speak with him in an attempt to "mitigate" Jenkins' behavior. After the meeting, Jenkins began to frequent various federal buildings in downtown Detroit as part of what he referred to as "one man mildly protesting." (Doc. 11 at 2). In addition, Jenkins began visiting the chambers of Judge Avern Cohn to speak with his staff. Judge Cohn's staff found these visits annoying and asked Read to stop the visits.

On February 8, 2010, the Theodore Levin Federal Courthouse, the U.S. Attorney's Office, and the U.S. Bankruptcy Court issued an "alert notice" regarding Jenkins to the Court Security Officers ("CSOs"). The "alert notice" permitted Jenkins to enter the buildings only for legitimate business and required him to be escorted throughout. Subsequent to the issuance of the "alert notice", Jenkins continued to frequent the federal buildings and repeatedly engaged in conversation with the CSOs. (Doc. 10 at 3). Jenkins did not enter the line or attempt to gain entry into the buildings. Instead, he engaged the CSOs in small talk. Often times, he asked the CSOs to tell AUSA Lang that "Jenkins says hello" and that he was not going away until his situation was resolved.

In early 2011, Jenkins visited the McNamara building, home of the Detroit regional FBI offices, to discuss burning the United States flag on federal property and the continuation of his mild protests. (Id. at 10). At least once a week for several weeks, Jenkins also frequented the DEA headquarters to protest.

2

In the beginning of September 2011, lead CSO Charles McKinney informed Read that Jenkins' visits began to bother the CSOs at 211 W. Fort, where the U.S. Attorney's Office and the U.S. Bankruptcy Court are located. McKinney stated that Jenkins repeatedly attempted to engage in conversation with CSOs screening visitors and sometimes refused to leave. McKinney also stated that this interfered with the CSOs' work. Read then reminded McKinney that he had the authority to arrest Jenkins if he failed to follow McKinney's direction. (Id. at 4).

At least once prior to September 21, 2011, Jenkins returned to 211 W. Fort and asked to talk to CSO Sandra Caver. McKinney asked Jenkins to leave because he interfered with the CSOs' duties and warned Jenkins that he could be arrested if he continued to be disruptive. Jenkins left.

On September 21, 2011, Jenkins visited the DEA headquarters and the Federal Courthouse without incident. Jenkins then entered 211 W. Fort and attempted to engage in conversation with CSO Caver. McKinney approached Jenkins and told him to leave, but Jenkins refused. As a result, McKinney arrested Jenkins and ticketed him for "failure to conform with signs and directions" under 41 C.F.R. § 102-74.385. Notably, federal agencies are required to post conspicuous notice of this regulation at the entrance to the federal facilities. See 41 C.F.R. §102-74.365.

At trial, Federal Protection Services Officer Gregory Brown testified that "CSOs are 'other authorized individuals' as referenced in the CFR applicable to Defendant." (Doc .10 at 13). Brown further stated that notice of these rules is typically posted at the screening stations, but did not specifically know where it is posted at 211 W. Fort. It is

3

uncontested that there was insufficient notice of the regulation posted at 211 W. Fort on the day of Jenkins' arrest.

At the conclusion of the trial, Magistrate Judge Michelson found that the conspicuous posting requirements under 41 C.F.R. § 102-74.365 were not met, but instead found that Jenkins had actual notice of the provision, which is an exception to the general rule of posting. See United States v. Bischel, 395 F.3d 1053 (9th Cir. 2005) (holding actual notice is an exception to the conspicuous posting requirement under 41 C.F.R. 102-74.365). Based on the testimony of the CSOs, Magistrate Judge Michelson also found that Jenkins knew what conduct was prohibited, along with the potential consequences for noncompliance. (Id. at 22). Therefore, the Magistrate Judge convicted Jenkins of a misdemeanor and ordered him to pay a $25.00 fine.

## II. STANDARD OF REVIEW

"In all cases of conviction by a United States magistrate an appeal of right shall lie from the judgment of the magistrate to a judge of the district court of the district in which the offense was committed." 18 U.S.C. § 3402. In reviewing a magistrate judge's order or judgment, "[t]he defendant is not entitled to a trial *de novo* by a district judge," but "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D).

## III. ANALYSIS

The Magistrate Judge convicted Jenkins of violating 41 C.F.R. § 102-74.385, which provides: "Persons in and on property must at all times comply with official signs of a prohibitory, regulatory or directory nature and with the lawful direction of Federal police officers and other authorized individuals." 41 C.F.R. § 102-74.385

Jenkins argues the evidence in the record is insufficient to support his conviction. In reviewing the sufficiency of the evidence "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Davis v. Lafler, 658 F.3d 525, 531 (6th Cir. 2011) (emphasis in original). The court may not reweigh the evidence or assess the credibility of witnesses. United States v. Scartz, 838 F.2d 876, 878 (6th Cir. 1988).

Jenkins challenges his conviction on three grounds. First, he argues that there is insufficient evidence to establish actual notice that he was on federal property, and thus subject to the direction of Federal police officers. The evidence presented at trial demonstrated that he frequented various federal buildings, including the Theodore Levin Federal Courthouse, the DEA Headquarters, the McNamara building, and 211 W. Fort as part of his "one man mildly protesting" campaign. He also met with Deputy Marshall Read and AUSA Falvey to voice his concern that the DEA tapped his telephone. In addition, Jenkins admitted that he knew CSO McKinney was a security guard and that his job was to protect the federal building. He also admitted that he regularly followed the directions of the CSOs. CSO McKinney and CSO Caver testified that CSO McKinney warned Jenkins that he could be arrested if he did not comply. The Magistrate Judge found the CSOs' testimony credible. Based on this evidence, the Magistrate Judge could reasonably conclude that Defendant had actual knowledge that he was on federal property, thereby subject to authority of federal police officers.

Second, Jenkins argues that there is insufficient evidence that he knew or should have known that CSO McKinney is a Federal police officer and therefore subject to his

authority. (Id.) However, Jenkins testified at trial that he knew CSO McKinney had the authority to arrest him if he did not leave and acknowledged that it is his duty to follow McKinney's orders. Indeed, Jenkins regularly followed the CSOs orders to leave when he was disruptive. On more than one occasion, McKinney told Jenkins that he would be arrested if he continued to interfere with the CSOs' work. Furthermore, Jenkins observed the CSOs performing their official duties at the federal buildings each time he visited. Certainly, the Magistrate Judge had ample evidence to conclude Jenkins knew that he was subject to the authority of CSO McKinney.

Third, Jenkins argues that there is insufficient evidence to warrant a finding that he knew what conduct was prohibited. (Id.) The evidence admitted at trial demonstrated that McKinney informed Defendant that he interfered with the CSOs' duties, and if he continued to interfere, he could be arrested. (Id. at 8). CSO McKinney testified that he warned Jenkins to stop talking to the CSOs while busy screening entrants into the building because it was disruptive. CSO Caver corroborated this fact. Based on the testimony, the Magistrate Judge could reasonably conclude that Jenkins knew he could not interfere with the CSOs' work.

In sum, it is clear that Magistrate Judge Michelson could have found the essential elements of the offense beyond a reasonable doubt.

## IV. CONCLUSION

Accordingly, the Court **DENIES** Defendant's appeal.

**IT IS SO ORDERED.**

                                       s/Marianne O. Battani
                                       MARIANNE O. BATTANI
                                       UNITED STATES DISTRICT JUDGE

DATE: July 17, 2013

## CERTIFICATE OF SERVICE

    I hereby certify that on the above date a copy of this Order was served upon all parties of record via ordinary U.S. Mail and/or electronically.

s/Bernadette M. Thebolt
Case Manager
